UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ANA M. FELICIANO,

        Plaintiff,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

------------------------------------------------------------ X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____            │
│ DATE FILED: 2 0 DEC 2011         │
└─────────────────────────────────┘
```

10-CV-3151 (JPO)

<u>ORDER ADOPTING
REPORT AND
RECOMMENDATION</u>

J. PAUL OETKEN, District Judge:

  Plaintiff Ana M. Feliciano initiated this action challenging the determination of the

defendant, the Commissioner of Social Security (the "Commissioner"), denying her claim for

Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the

"SSA"), 42 U.S.C. §§ 1381-1383f, for the period January 23, 2008 through September 30, 2009.

  Before the Court is the Commissioner's motion for judgment on the pleadings under Rule

12(c) of the Federal Rules of Civil Procedure.  The matter was referred to Magistrate Judge

Kevin N. Fox, who issued a Report and Recommendation that the Commissioner's motion be

granted and that the Commissioner's decision be affirmed (the "Report").[1]  Ms. Feliciano filed

timely objections to the Report.

  The Court has reviewed the Report, Ms. Feliciano's objections to the Report, and the

Commissioner's response to those objections.  The Court has also reviewed thoroughly the

---

[1] The Report is attached to this Order as an exhibit.

certified copy of the administrative record in this case filed by the Commissioner (the "Record").[2]

For the reasons that follow, the Court ADOPTS the Report and Recommendation and GRANTS the Commissioner's motion for judgment on the pleadings.

I.   **Background**

The Report contains a comprehensive summary of the Record; familiarity with that summary is assumed.

Ms. Feliciano filed an application for SSI benefits on January 23, 2008.  When the application was denied, Ms. Feliciano sought review by an Administrative Law Judge ("ALJ"). Hearings were held on September 4 and 22, 2009.  At the first hearing, Ms. Feliciano, who was represented by counsel, testified on her own behalf.  The ALJ also heard expert testimony from two medical experts and a vocational expert.  The ALJ issued a decision dated September 30, 2009, finding that Ms. Feliciano was not disabled under the SSA.

Ms. Feliciano filed a *pro se* complaint in this Court on April 14, 2010.  The parties stipulated to an extension of time for the Commissioner to answer, in order to give him time to obtain and file the Record.  The Commissioner filed an Answer, along with the Record, on September 7, 2010.  At that time, the case was proceeding before the Honorable Paul G. Gardephe, United States District Judge.  On September 8, 2010, Judge Gardephe issued a scheduling order for the Commissioner's then-forthcoming motion for judgment on the pleadings.  Pursuant to that scheduling order, the Commissioner was to file the motion for judgment on the pleadings on or before November 19, 2010, and Ms. Feliciano was to file any opposition on or before January 21, 2011.

---

[2] Citations to the Record are styled, as in the Report, as "Tr. _."

On October 14, 2010, the case was referred to Magistrate Judge Fox for a report and recommendation on the Commissioner's eventual motion.

On November 19, 2010, the Commissioner filed his motion for judgment on the pleadings. At that time, Ms. Feliciano was still representing herself *pro se*. At some point thereafter, she retained an attorney, who filed an appearance on December 15, 2010.

Plaintiff's attorney failed to file an opposition to the Commissioner's motion. On February 1, 2011, more than ten days after the deadline to file such opposition, Ms. Feliciano, through counsel, submitted a stipulation for an extension of time but did not provide any explanation for the failure to file a timely opposition to the motion. Judge Fox therefore denied Ms. Feliciano's application for an extension to file her opposition. (*See* Dckt. Entry No. 12.)

Ms. Feliciano moved for reconsideration of this decision. In support of the motion for reconsideration, Plaintiff's counsel submitted a memorandum explaining that neither he nor Ms. Feliciano was aware of the motion until January 31, 2011, when Plaintiff's counsel received a letter enclosing the motion papers from defense counsel. That letter, dated January 26, 2011, stated that defense counsel had attempted to serve the motion on Ms. Feliciano by mail, but that the package was returned from the Post Office, indicating that she did not live at the stated address. (*See* Dckt. Entry No. 14.)

Judge Fox denied Plaintiff's motion for reconsideration on the ground that Plaintiff "presented, and asked the Court to consider, facts, sounding in excusable neglect, *see* Fed. R. Civ. P. 6(b), and case law which were not presented to the Court when the initial request for an enlargement of time was made." (Memorandum and Order at 2, March 31, 2011 (Dckt. Entry No. 15).) As Judge Fox noted, a motion for reconsideration is not an opportunity to "advance new facts, issues or arguments not previously presented to the Court." *Id.* (citing *Finkelstein v.*

3

*Mardkha*, 518 F. Supp. 2d 609, 611 (S.D.N.Y. 2007)).  Accordingly, Ms. Feliciano did not

submit any opposition to the Commissioner's motion for judgment on the pleadings.

On July 15, 2011, Judge Fox issued the Report, recommending that the Commissioner's

motion be granted and that the final decision of the Commissioner be affirmed.  Ms. Feliciano

filed timely objections to the Report on July 29, 2011 (the "Objection" (Dckt. Entry No. 17.)).

The Commissioner filed a response to Ms. Feliciano's objections on August 26, 2011 (the

"Response" (Dckt. Entry No. 19)).

On September 30, 2011, the case was reassigned to the undersigned pursuant to this

District's Rules for the Division of Business Among District Judges governing the reassignment

of cases to new District Judges.

**II.    Standards of Review**

**A. Review of a Magistrate Judge's Report and Recommendation**

When reviewing a report and recommendation by a magistrate judge, a district court

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1).  The Court reviews the Report strictly for clear error

where no objection has been made, and will make a *de novo* determination regarding those parts

of the Report to which objections have been made.  *McDonaugh v. Astrue*,  672 F. Supp. 2d 542,

547 (S.D.N.Y. 2009) (citation omitted).

> However, objections that are merely perfunctory responses argued in an attempt
> to engage the district court in a rehashing of the same arguments set forth in the
> original petition will not suffice to invoke *de novo* review of the magistrate's
> recommendations.  Further, the objections must be specific and clearly aimed at
> particular findings in the magistrate judge's proposal.

*Id.* (internal citations and quotation marks omitted).  When a party makes only conclusory or

general objections, or simply reiterates the original arguments, the Court will review the Report

4

strictly for clear error. *Crowell v. Astrue*, No. 08 Civ. 8019, 2011 WL 4863537, at *2 (S.D.N.Y.

Oct. 12, 2011) (citing *Pearson–Fraser v. Bell Atl.*, No. 01 Civ. 2343, 2003 WL 43367, at *1

(S.D.N.Y. Jan. 6, 2003)).

De novo review of a magistrate's Report does not require that the Court conduct a *de novo* hearing on the underlying issues. *Marine v. Barnhart*, No. 00 Civ. 9392, 2003 WL

22434094, at *1 (S.D.N.Y. Oct. 24, 2003) (citing *United States v. Raddatz*, 447 U.S. 667, 676

(1980)). Rather, Congress intended "to permit whatever reliance a district judge, in the exercise

of sound judicial discretion, chose to place on a magistrate's proposed findings and

recommendations." *Raddatz*, 447 U.S. at 676. Further, courts have held that even when

exercising *de novo* review, "[t]he district court need not . . . specifically articulate its reasons for

rejecting a party's objections . . . ." *LaBarbera v. D. & R. Materials Inc.*, 588 F. Supp. 2d 342,

344 (E.D.N.Y. 2008) (quoting *Morris v. Local 804, Int'l Bhd. of Teamsters*, 167 Fed. Appx. 230,

232 (2d Cir. 2006)).

## B.  Judicial Review of ALJ Social Security Decisions

In reviewing a denial of social security benefits, courts are to uphold the Commissioner's

decision unless it is not supported by substantial evidence or it is based on an error of law.

*Melville v. Apfel*, 198 F.3d 45, 51-52 (2d Cir. 1999); *Alston v. Sullivan*, 904 F.2d 122, 126-27 (2d

Cir. 1990). *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if

supported by substantial evidence, shall be conclusive."). "Substantial evidence" has been

interpreted to mean "more than a mere scintilla. It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Pratts v. Chater*, 94 F.3d 34, 37 (2d

Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine whether

the findings are supported by substantial evidence, the reviewing court is required to examine the

entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

It is not the court's role to determine *de novo* whether the plaintiff was disabled. *Melville*, 198 F.3d at 52. If the court finds that substantial evidence exists to support the ALJ's determination, the decision will be upheld, even if substantial evidence supporting the Plaintiff's position also exists. *Devora v. Barnhart*, 205 F. Supp. 2d 164, 171-72 (S.D.N.Y. 2002) (citing *Alston*, 904 F.2d at 126); *see also Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) ("The court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.").

## III.   **Plaintiff's Objections**

Ms. Feliciano raises three separate objections to the Report. She objects to: (1) the Magistrate's conclusion that the ALJ applied the correct standard in weighing evidence connected to Nurse Practitioner Sylvia Cotto; (2) the Report's "finding that the plaintiff did not meet the requirements" of Section 12.04 of the listing of impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04; and (3) the "omission" of several facts in the Record from the Report. (Objection at 2, 5, 8.)

As an initial matter, Defendant argues that all of Ms. Feliciano's objections are waived because she failed to raise any of the issues before the Magistrate Judge. (Response at 2 (citing *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996))). It is true that, in reviewing a magistrate's report and recommendation, "a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). However, given the somewhat unusual

6

circumstances that resulted in Ms. Feliciano's inability to submit an opposition to the

Commissioner's motion—particularly the fact that Ms. Feliciano was representing herself *pro se*

at the time that the Commissioner unsuccessfully attempted to serve her with the motion—the

Court will entertain Ms. Feliciano's objections notwithstanding her failure to raise them with the

magistrate judge.

### A. The ALJ's Evaluation of the Assessment by Nurse Practitioner Sylvia Cotto

Plaintiff objects to Judge Fox's determination that the ALJ applied the correct legal

standard to the report and functional assessment of Nurse Practitioner Sylvia Cotto from August

28, 2008.  Ms. Cotto had been Plaintiff's treatment nurse at Promesa, Inc., a health services

provider where Plaintiff sought treatment between October 2007 and April 2009.  As ably

summarized by Judge Fox, Ms. Cotto's report concluded as follows:

> [Ms. Cotto] stated that Feliciano was receiving psychiatric treatment at Promesa Inc., once a month, since 2006. (Tr. 449). Cotto described Feliciano's symptoms as mood swings, insomnia, anxiety, crying spells and irritability. (Tr. 449). She diagnosed major and recurrent depression and hypertension and reported that Feliciano's [Global Assessment of Functioning] was 55. (Tr. 450). Cotto stated that Feliciano was a chronic substance abuser with many failed attempts at abstinence. (Tr. 450). In assessing Feliciano's mental functional capacity, Cotto indicated poor ability to: (1) follow work rules; (2) deal with the public; (3) relate to co-workers; (4) use judgment; (5) interact with supervisors; (6) understand, remember and carry out complex and detailed, but not complex job instructions; (7) behave in an emotionally stable manner; (8) relate predictably in social situations; and (9) demonstrate reliability. (Tr. 451-52). She stated Feliciano had a fair ability to: (a) function independently; (b) maintain attention; (c) understand, remember and carry out simple job instructions; and (d) maintain personal appearance. (Tr. 451-52). Cotto described Feliciano's limitations as borderline intelligence, concrete thinking, slow processing of information, forgetfulness and poor concentration and retention ability. (Tr. 452).

(Report at 7-8.)

The ALJ concluded that Ms. Cotto's assessment is entitled to "very little weight" for

several reasons. First, although Ms. Cotto treated Ms. Feliciano, Ms. Cotto is not entitled to the

deference accorded to "treating physicians" in disability determination proceedings, *see* 20 C.F.R. § 404.1527(d)(2), because she was a nurse practitioner, and not a medical doctor or clinical psychologist. *See* 20 C.F.R. § 416.913(a) (listing acceptable medical sources). Second, Ms. Cotto concluded that many of Ms. Feliciano's ailments were due to her substance abuse and addiction, which do not constitute a permissible basis for claiming disability benefits. *See* 42 U.S.C. § 423 (providing that an individual will not be considered disabled where alcoholism or drug addiction are "contributing factors" material to a determination that the individual is disabled); 20 C.F.R. § 416.935 (providing that where an individual's disabling limitations would not be present absent the drug addiction or alcoholism, then drug addiction and alcoholism are considered "contributing factors" to the disability determination). Finally, the ALJ pointed out that Ms. Cotto's conclusion that Ms. Feliciano had a listings-level impairment was contradicted by her own notes and treatment records, which often described Feliciano's emotional and psychological characteristics as "fair" and "average." (*See generally* Tr. 199-247.) In addition, Ms. Cotto assigned Ms. Feliciano a Global Assessment of Functioning ("GAF") score of 55 (meaning only moderate dysfunction). (*Id.*)

Ms. Feliciano objects to Judge Fox's determination that the ALJ applied the correct standard in weighing Ms. Cotto's report. Feliciano cites a Social Security Administration Policy Interpretation Ruling providing that "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006). *See also Barry v. Astrue*, No. CV-09-1677, 2010 WL 3168630, *10-11 (D. Ariz. Aug. 10, 2010) (holding that nurse practitioner's opinion may be given more weight

pursuant to this Social Security Ruling).  Ms. Feliciano argues that Ms. Cotto treated her from

January 2008 through April 2009, "was more involved with plaintiff's psychiatric treatment than

any other medical provider during that time period," and was therefore "in the best position to

evaluate and assess[] plaintiff's limitations." (Objection at 6.)

The problem with Feliciano's argument is that Ms. Cotto has not provided "better

supporting evidence" for her opinion.  SSR 06-03p, 2006 WL 2329939, at *5.  Indeed, her

conclusions are contradicted not only by her own treatment notes and assigned GAF score, but

also by other evidence in the record.  Even treating physicians' opinions (which are normally

granted deference) are not accorded controlling weight where those opinions are "not consistent

with other substantial evidence in the record, such as the opinions of other medical experts."

*Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).   Here, Ms. Cotto's conclusions are

contradicted by the opinions of the testifying medical experts, Drs. Leslie Fine and Richard

Wagman, as well as the consultative examination report of Dr. Herbert Meadow, all of whom

concluded that Ms. Feliciano did not have a listings-level impairment.

As the Second Circuit has explained, "under the regulations, the Commissioner is

required to provide 'good reasons' for the weight []he gives to treating source's opinion." *Id.* at

32-33 (citing 20 C.F.R. § 404.1527(d)(2)); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998))

(internal citations omitted).  The ALJ provided ample reasons for the weight he assigned to Ms.

Cotto's assessment, and Judge Fox did not err in finding that the ALJ correctly weighed this

evidence.

### B. The ALJ's Conclusion that Plaintiff Did Not Meet the Listing Requirements for an Affective Disorder

Ms. Feliciano argues that the magistrate judge erred in affirming the ALJ's conclusion

that she did not meet the requirements to be categorized as "disabled," and was therefore not

entitled to SSI benefits. Specifically, Ms. Feliciano argues that the ALJ erred in concluding that

Plaintiff did not satisfy the requirements of Section 12.04 of the listing of impairments, 20 C.F.R.

Part 404, Subpart P, Appendix 1, § 12.04.

This objection comes perilously close to being simply a "general objection" to the

magistrate judge's overall decision, which is typically reviewed only for clear error. *See*

*Crowell*, 2011 WL 4863537, *2. Nevertheless, even reviewing this issue *de novo*, the Court

adopts the magistrate judge's decision with regard to the ALJ's conclusions regarding Plaintiff's

failure to meet the requirements of Section 12.04.

Section 12.04 lists the characteristics an applicant would be required to demonstrate in

order to qualify for disability benefits based upon an affective disorder. The section provides as

follows:

> Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A.    Medically documented persistence, either continuous or intermittent, of one of the following:
>
> > 1. Depressive syndrome characterized by at least four of the following:
> >     a. Anhedonia or pervasive loss of interest in almost all activites; or
> >     b. Appetite disturbance with change in weight; or
> >     c. Sleep disturbance; or
> >     d. Psychomotor agitation or retardation; or
> >     e. Decreased energy; or
> >     f. Feelings of guilt or worthlessness; or
> >     g. Difficulty concentrating or thinking; or
> >     h. Thoughts of suicide; or
> >     i. Hallucinations, delusions, or paranoid thinking; or
>
> B.    Resulting in at least two of the following:
> >     1. Marked restriction of activities of daily living; or
> >     2. Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04.

The magistrate judge explained that the ALJ found that although Ms. Feliciano "had a depressive disorder and polysubstance abuse, the impairments did not meet or equal the requirements of any listed impairment" in Section 12.04. (Report at 20.)

Ms. Feliciano argues that the evidence in the Record shows that she satisfied the requirements of both sub-sections A and B. The Record does contain evidence that would potentially satisfy several of the symptoms listed in sub-section A. Indeed, the ALJ concluded that Ms. Feliciano does suffer from an affective disorder (which the ALJ determined to be "a depressive disorder [Not Otherwise Specified]"). (Tr. 14.) However, Ms. Feliciano has not shown that she meets two or more of the criteria in sub-section B. Ms. Feliciano argues only that she "satisfied the B criteria because the record demonstrates that she has marked restrictions of daily activities." (Objection at 10.) Even if this argument were accepted, Plaintiff would still be required to show that she meets at least one of the other criteria in sub-section B.

Judge Fox correctly found that there was substantial evidence to support the ALJ's conclusion that Plaintiff did not meet the requirements under sub-section B. The record does not demonstrate a "*marked* restriction of activities of daily living." Although Plaintiff stated that there were some days during which she did "nothing at all," at the hearing she testified that she cooked, cleaned, did laundry, and went on walks for exercise. (Tr. 25-26.) And although Plaintiff points to several references to problems with social functioning or concentration, substantial evidence supports the ALJ's determination that none of these rose to the level of a "marked difficulty."

The ALJ appropriately relied upon the opinion testimony of medical experts in determining that Plaintiff did not meet the requirements of a listed impairment. *See* 20 C.F.R. § 416.927(f)(2)(iii) (providing that ALJ "may also ask for and consider opinions on the nature and severity of [an applicant's] impairment(s) and on whether [the applicant's] impairment(s) equals the requirements of any impairment listed in appendix 1 to subpart P of part 404 of this chapter."). Here, Dr. Leslie Fine testified as a medical expert regarding Ms. Feliciano's psychiatric impairment. He concluded that although Ms. Feliciano had a history of depressive disorder and anxiety, her impairments did not satisfy the listing requirements under section 12.04. (Tr. 40-42.) He also concluded that Ms. Feliciano's psychiatric impairments were exacerbated by her substance abuse. (*Id.*)

Plaintiff argues that Dr. Fine testified that "if one was to believe the reports of Drs. Meadow and Guttman, then plaintiff would meet the requirements of Listing § 12.04." (Objection at 10.) The record does not support this contention. At the hearing, Ms. Feliciano's attorney presented Dr. Fine with Dr. Guttman's consultative examination from March 20, 2008, which stated that Feliciano "does no cooking, cleaning, laundry, or shopping." (Tr. 47-48, 146.) Feliciano's attorney asked Dr. Fine, "If we were to accept that, would that not fall under the part B of 12.04 as far as restrictions of daily living?" (Tr. at 48.) Dr. Fine responded, "If it's true, yes." (*Id.*) Dr. Fine did not state that Feliciano met the requirements of Section 12.04. At best, he concluded that, if the particular document in front of him was accurate, then that would "fall under" part B of section 12.04. In any event, even if that evidence alone showed a "marked restriction of daily activities," Feliciano would still need to meet the other criteria under sub-section B.

12

Moreover, as the ALJ pointed out immediately after this testimony, the evidence presented to Dr. Fine was directly contradicted by other evidence in the record, including Ms. Feliciano's own testimony that she cooks, shops, and cleans her living space.  (Tr. 25-26, 48.) Further, on the same day as Dr. Guttman's consultative examination, Dr. Herbert Meadow performed a consultative examination, and his report states that Feliciano "dresses, bathes, and grooms herself.  She cooks, cleans, does laundry, shops, manages money, and takes public transportation.  She socializes with friends and family." (Tr. 151.)  Dr. Meadow concluded that the "[r]esults of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (*Id.*)

Plaintiff's counsel stated at the hearing that he "[j]ust wanted to bring the conflict [in the Record] forward." (Tr. 48).  But as the Second Circuit has explained, "[w]here there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Alston*, 904 F.2d at 127.

In sum, the Court adopts the magistrate judge's determination that substantial evidence supported the ALJ's conclusion that Plaintiff did not meet the listing requirements of Section 12.04.  "If the Court finds that substantial evidence exists to support the ALJ's determination, the decision will be upheld, even if contrary evidence exists." *Mitchell v. Astrue*, No. 07 Civ. 285, 2009 WL 3096717, *14 (S.D.N.Y. Sept. 28, 2009) (citing *Alston*, 904 F.2d at 126; *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).  Thus, the Court adopts Judge Fox's finding that substantial evidence support the ALJ's conclusion that Ms. Feliciano did not satisfy Section 12.04.

## C. Omission of Evidence

13

Plaintiff's argues that the Report "omits" or "fails to mention" certain facts from the Record.  Specifically, Plaintiff objects to the omission of the following facts or pieces of evidence:

(1) portions of testimony from the hearing, including (a) Ms. Feliciano's testimony from the hearing regarding her weight, her mental and emotional state, the effectiveness of her medication, and her daily activities; and (b) testimony from Dr. Fine, purportedly stating that, based on the evidence, Ms. Feliciano satisfied the listing requirements of Section 12.04;

(2) a letter from Dr. Hia Tun, stating that his working diagnosis for Ms. Feliciano was Major Depressive disorder, and that she was attending his hospital's intensive outpatient rehab treatment;

(3) the purported fact that there was minimal improvement in Ms. Feliciano's psychiatric condition despite her alleged compliance with her medication;

(4) certain facts from the consultative examination of Ms. Feliciano by Dr. Guttman, including that she informed him that she has had depression since 2005, had been hospitalized for treatment for depression and attempted suicide, and that she does no cooking, cleaning, laundry, or household shopping;

(5) certain facts from the consultative examination of Ms. Feliciano by Dr. Meadow, including that she described experiencing symptoms of depression, heightened levels of anxiety, and forgetfulness;

(6) the treatment records from Ms. Feliciano's stay in Conifer Park, an inpatient drug treatment program, which stated that she had very few friends and did not participate in any leisure activities.

14

Although the reviewing court must examine the entire record, including contrary evidence, to determine whether the Commissioner's decision was supported by substantial evidence, *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999), Plaintiff does not point to any authority for the proposition that a magistrate judge must exhaustively catalogue every single fact contained in the record, regardless of whether such evidence is duplicative of evidence already discussed, or directly contradicted by other evidence in the record.

The "omitted" evidence appears to show that Plaintiff suffered from a depressive disorder—a fact that was not in doubt by either the ALJ or the magistrate judge. The Report provides a thorough and detailed review of Plaintiff's medical history, including evidence concerning Plaintiff's treatment for depression and drug addiction. The Report contains extensive citations to evidence from many of the same documents that Plaintiff argues were "omitted" from the Report.

The omission of these facts from the Report would be material only insofar as inclusion of those facts would cast doubt on the magistrate judge's conclusion that the ALJ's decision was supported by substantial evidence. However, even if the Report included these facts, this Court would still adopt Judge Fox's conclusion that the ALJ's decision was supported by substantial evidence. For example, Plaintiff objects to the omission of the "fact" that the treatment notes from Ms. Cotto show that Plaintiff was largely compliant with her medication, but that there was minimal improvement in her condition. But even setting aside the fact that Ms. Cotto's records demonstrate that she was treating Plaintiff for drug dependence in addition to psychiatric problems, Plaintiff does not show how the omitted facts about the efficacy of Plaintiff's

medication would have changed the magistrate judge's decision that the ALJ's conclusion was supported by substantial evidence.[3]

As to the specific facts that Plaintiff argues should have been included in the Report, many of them are directly contradicted by other evidence in the record. For example, Plaintiff objects to the fact that the Report did not mention her hearing testimony that "there are some days that she does nothing at all" (Objection at 2), and that she reported to Dr. Guttman that she "does no cooking, cleaning, laundry or shopping." (Objection at 4.) But Dr. Meadow's report and Plaintiff's own testimony contradict this evidence.

In sum, the Court does not find that the magistrate judge erred in declining to include these particular facts in the Report.

---

[3] Similarly, the notes from Ms. Feliciano's stay at Conifer Park are almost entirely concerned with Ms. Feliciano's struggles with drug addiction. (*See* Tr. 294-95.) The fact that the notes mention that Ms. Feliciano "lacks an adequate external support network to promote abstinence due to non participation in self-help groups" does not undermine Judge Fox's determination that there was substantial evidence supporting the ALJ's decision. Indeed, the notes from Conifer Park also state that "Patient is employable." (Tr. 295.)

IV.     **Conclusion**

The Court has reviewed the remaining portions of Magistrate Judge Fox's very thorough and well-reasoned Report, to which no objections were made, and finds no clear error on the face of the record.  Judge Fox's ultimate finding, that the ALJ's determination was supported by substantial evidence and was not based on any legal errors, is correct.

Accordingly, Defendant's motion for judgment on the pleadings is GRANTED.  The Clerk of the Court is respectfully directed to enter judgment on behalf of Defendant and to close the case.

Dated:  New York, New York
          December 20, 2011

                                        J. PAUL OETKEN
                                        United States District Judge

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANA M. FELICIANO,                                  :

                  Plaintiff,                 :

         -against-                          : **REPORT AND RECOMMENDATION**

COMMISSIONER OF SOCIAL SECURITY,   :        10 Civ. 3151 (PGG)(KNF)

                Defendant.                :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL G. GARDAPHE, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Ana M. Feliciano ("Feliciano") commenced this action pro se against the Commissioner

of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ")

decision finding her ineligible for Supplemental Security Income ("SSI") payments, under Title

XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-1383f. Thereafter, the

Commissioner filed an answer to the complaint. On September 8, 2010, your Honor issued a

scheduling order, directing the Commissioner to file his motion for judgment on the pleadings,

on or before November 19, 2010, and Feliciano to file any opposition, on or before January 21,

2011. The Commissioner filed his motion for judgment on the pleadings, pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure. On December 16, 2010, an attorney entered an

appearance on behalf of Feliciano. On February 1, 2011, Feliciano's counsel made an

application for an order enlarging the time to respond to the Commissioner's motion. The

application was denied on February 2, 2011, as was a subsequent motion for reconsideration.

Before the Court is the Commissioner's unopposed motion for judgment on the pleadings.

### *Administrative Procedural History*

On January 23, 2008, Feliciano filed an application for SSI benefits. (Tr. 66). Her application was denied and she requested a hearing before an ALJ. (Tr. 66-73). The hearing was conducted on September 4 and 22, 2009. (Tr. 18-65). On September 30, 2009, the ALJ found that Feliciano was not disabled. (Tr. 6-17). On January 15, 2010, the Appeals Council denied Feliciano's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). This action followed.

### *Non-Medical Evidence*

At the time of the hearing, Feliciano was 47 years old and living in a shelter with her husband and eighteen-year old son. (Tr. 22). She completed ninth grade and, for fifteen years prior to the hearing, had not worked. (Tr. 23). At the hearing, Feliciano stated that she suffered from depression and anxiety and was forgetful. (Tr. 23). She testified that she received drugs and therapy for her mental problems but they did not help much. (Tr. 24). She testified further that she had not used the medication Xanax for about one year, but had used cocaine as recently as April 2009. (Tr. 25). Feliciano stated that she was treated at Promesa Inc., a health services provider, for eight months and did not use drugs during that period. (Tr. 31-32). According to Feliciano, she cooked, shopped, cleaned, spent time attending group counseling, visiting her mother-in-law with her husband, walking for exercise and going to the cinema. (Tr. 25-26). When asked by the ALJ whether she had any physical symptoms or problems that would interfere with working, Feliciano responded that she had lower back pain, for which she took medication. (Tr. 35). In addition, she reported that, due to back pain, she could walk for a distance of only one block and could not stand for longer than twenty minutes at a time. (Tr. 36). Feliciano advised the ALJ that she could lift and carry two bags of groceries. (Tr. 36).

2

A vocational expert ("VE") testified at the hearing. (Tr. 54-65). The ALJ presented a hypothetical question to the VE, asking her to identify jobs at the medium, light, and sedentary levels that could be performed, assuming that the person: (i) is a woman of 47 years of age: (ii) has a ninth grade education; (iii) lacks a history of past relevant work; and (iv) is restricted to work tasks that are simple, routine, repetitive, low in stress and involve minimal amounts of social contact. (Tr. 56). The VE testified:

> Laundry worker is medium, SVP 2, 8000 locally and 250,000 nationally. Also at medium is linen room attendant, medium, SVP 2, 4000 locally and 100,000 nationally. At the light level we have assembly jobs that are SVP 2, 10,000 locally and 1,000,000 nationally. And you asked for sedentary as well. Sedentary we have jewelry bench work, SVP 2, 1000 locally and 50,000 nationally. . . . There are light packing jobs, SVP 2, 8000 locally and 1,000,000 nationally. . . . another sedentary, . . . a - - stone setter in jewelry also, sedentary, SVP 2, 1000 locally and 30,000 nationally. . . . And at the medium level there are 7000 [local packing jobs] and there are 400 sedentary packers [and] [t]hree-quarters of a million [national packers at the medium level]. (Tr. 56-57).

### *Medical Evidence*

<u>Promesa Health Services</u>

Feliciano was treated at Promesa Inc., during the period October 2007 through April 2009. (Tr. 171-289). On October 2, 2007, Feliciano's laboratory results were positive for cannabinoids, cocaine and Methadone. (Tr. 173). On October 19, 2007, the laboratory results were positive for cannabinoids and cocaine, and the November 9, 2007 results were positive for cannabinoids, cocaine and opiates. (Tr. 174, 180). Feliciano's November 14, 2007 laboratory results were positive for cannabinoids, cocaine, Benzodiazepine and Methadone. (Tr. 181). Her December 6, 2007 laboratory results were positive for Methadone. (Tr. 182).

On December 18, 2007, Feliciano presented for examination with Dr. Daniel Rosa ("Dr. Rosa") "for transfer to MTA-R program." (Tr. 252-53). She indicated no medical concerns and

3

her examination resulted in no abnormal findings. (Tr. 252-53). On December 26, 2007, Feliciano complained about chest pain and Dr. Rosa examined her, reporting her lungs were clear and that palpation of the chest produced tenderness. (Tr. 254-57). An electrocardiogram administered to Feliciano revealed "no ischemic changes and no st elevations or depressions." (Tr. 255). Feliciano was advised that a negative electrocardiogram "does not rule out potentially serious or catastrophic causes," but she was unwilling to visit the emergency room. (Tr. 255).

Feliciano's January 5, 2008 laboratory results were positive for Benzodiazepine, cocaine and Methadone. (Tr. 186). On the same day, she visited Dr. Rosa complaining of cold symptoms. (Tr. 261). Upon examination, Dr. Rosa reported normal findings, assessed acute bronchitis and prescribed medication. (Tr. 261-62). On January 15, 2008, Feliciano saw Dr. Rosa to check a wound associated with her eyebrow piercing and reported no other medical concerns. (Tr. 265-66). Dr. Rosa reported no abnormal findings, assessed drug abuse and noted the latest laboratory results were "positive for cannabis, cocaine and benzos." (Tr. 266). On January 16 and 23, 2008, Feliciano tested positive for cocaine. (Tr. 191-92). On February 2, 2008, Feliciano visited Dr. Rosa, complaining of leg pain and cold symptoms. (Tr. 272-73). Dr. Rosa examined Feliciano and reported no abnormalities, assessing asthma and limb pain. (Tr. 272-73).

<u>Treatment by Nurse Practitioners and Non-Physicians</u>

On October 3, 2007, Feliciano was seen by nurse practitioner Romeeda Mohammed for complaints of back pain. (Tr. 249). A physical examination revealed normal musculature with no skeletal tenderness or joint deformity. (Tr. 249-50). The nurse practitioner's assessment was acute backache, not otherwise specified, with unremarkable physical examination. (Tr. 249-50). On November 30, 2007, it was reported that Feliciano's global assessment of functioning

4

("GAF") was 55.  (Tr. 188).

On December 19, 2007, Feliciano was seen by Lucy Palomino ("Palomino"), a nurse practitioner.  (Tr, 183-84).  Feliciano requested that her psychiatric medication be reinstated, explaining that the medications had been discontinued after she entered the residential detoxification program.  (Tr. 183).  Physical examination of Feliciano revealed no apparent distress, her lungs were clear and she had a regular heart rhythm with no evidence of heart murmur, gallops or rubs.  (Tr. 183).  An evaluation of Feliciano's mental state produced no evidence of mood swings but showed evidence of poor attention span and concentration, without suicidal ideation.  (Tr. 183).  Palomino indicated that Feliciano's chronic problems were affective psychosis, opioid dependence and osteoarthritis, and she reinstated Feliciano's medications.  (Tr. 183-84).  Feliciano's December 20, 2007 laboratory results were positive for cocaine and cannabinoids.  (Tr. 185).  On January 2, 2008, Feliciano was seen for a urinary tract infection, and Palomino reported that she was not in acute distress and denied fever, fatigue or night sweats.  (Tr. 258-60).

On January 11, 2008, Feliciano visited Sylvia Cotto ("Cotto"), a nurse practitioner, complaining of anxiety, and Cotto noted that Feliciano was recently admitted to a residential detoxification program.  (Tr. 187).  Feliciano tested positive for cocaine on that day.  (Tr. 190).  She complained of difficulty adjusting to the rules of the rehabilitation program.  (Tr. 187).  Cotto noted that Feliciano's appearance, speech and affect were appropriate.  (Tr. 187).  Feliciano's psychomotor behavior was unremarkable, her attitude cooperative and her memory intact.  (Tr. 187).  Cotto described Feliciano's intellect as below average but her reasoning skill, as well as her impulse control, judgment and insight, as fair.  (Tr. 187).  Feliciano expressed no suicidal or homicidal ideation and was determined to have a urinary tract infection.  (Tr. 187).

5

On February 11, 2008, Feliciano visited Palomino due to cold symptoms. (Tr. 274). Palomino examined her and reported diffuse wheezing on the right side of Feliciano's chest, but her lungs were clear. (Tr. 275). On February 20, 2008, Palomino saw Feliciano because of discomfort in her urinary tract and pain in her right leg. (Tr. 277). Palomino reported finding no apparent distress and assessed Feliciano as having a urinary tract infection. (Tr. 278). On February 27, 2008, Feliciano was seen by Lise Vincent for a painful bunion and fungal toe nail and was assessed with chronic bursitis, hallux valgus and onychomycosis. (Tr. 285-86).

On March 11, 2008, Feliciano was seen by Cotto for leg pain; the examination revealed no musculoskeletal abnormality. (Tr. 287-88). Cotto noted that Feliciano had a decreased range of motion and assessed chronic limb pain. (Tr. 288). On April 1, 2008, Cotto reported no signs of psychosis or mania. (Tr. 200). Feliciano was well groomed and exhibited no unremarkable behavior. (Tr. 200). Her attention span was normal, reasoning fair, memory intact and thoughts logical. (Tr. 200).

On May 29, 2008, Feliciano visited Cotto to renew her medication and admitted intermittent cocaine use. (Tr. 203). Cotto determined that Feliciano's mental status had not changed from the April 1, 2008 examination, except that her reasoning, judgment and insight were assessed as poor. (Tr. 204). On July 27, 2008, Feliciano visited Cotto without an appointment and stated she was on Methadone. (Tr. 207). A mental status evaluation showed no signs of psychosis or mania and her psychobehavior and thought content were described as unremarkable. (Tr. 208). Although Feliciano's mood was anxious, her affect was appropriate and she exhibited a cooperative attitude. (Tr. 208). Cotto reported that Feliciano's memory was intact, she was able to maintain attention and her reasoning, judgment and insight were fair. (Tr. 208).

6

On August 1, 2008, Feliciano visited Cotto concerning renewal of her medication and stated that she had used cocaine and Xanax one month earlier.  (Tr. 211).  Feliciano reported that she had not experienced side effects from any medication.  (Tr. 211).  Cotto found no signs of psychosis or mania and noted that Feliciano's appearance was inappropriate because she was dressed in a formal black dress and had very long earrings and heavy makeup.  (Tr. 212).  Cotto noted Feliciano's affect and mood were labile, her memory intact and she was cooperative.  (Tr. 212).  Feliciano's reasoning was poor and her impulse control, judgment and insight were fair.  (Tr. 212).  On August 28, 2008, Feliciano visited Cotto to renew her medications and Cotto noted that her mood was more stable and she had no crying spells.  (Tr. 215-17).  Feliciano's mental status evaluation was unremarkable.  (Tr. 216).

On August 28, 2008, Cotto[1] completed a psychiatric assessment of Feliciano.  (Tr. 449-53).  She stated that Feliciano was receiving psychiatric treatment at Promesa Inc., once a month, since 2006.  (Tr. 449).  Cotto described Feliciano's symptoms as mood swings, insomnia, anxiety, crying spells and irritability.  (Tr. 449).  She diagnosed major and recurrent depression and hypertension and reported that Feliciano's GAF was 55.  (Tr. 450).  Cotto stated that Feliciano was a chronic substance abuser with many failed attempts at abstinence.  (Tr. 450).  In assessing Feliciano's mental functional capacity, Cotto indicated poor ability to: (1) follow work rules; (2) deal with the public; (3) relate to co-workers; (4) use judgment; (5) interact with supervisors; (6) understand, remember and carry out complex and detailed, but not complex job

---

[1] Although word-processed documents indicate the name of the person who examined Feliciano on multiple occasions as Sylvia Cotto, the psychiatric evaluation shows a handwritten signature by "Sylvia Cotter, N.P. Promesa."  It appears from the ALJ's decision that Sylvia Cotto and Sylvia Cotter are the same person.  The Court will refer to the author of the August 28, 2008 psychiatric assessment as Cotto.

instructions; (7) behave in an emotionally stable manner; (8) relate predictably in social situations; and (9) demonstrate reliability.  (Tr. 451-52).  She stated Feliciano had a fair ability to: (a) function independently; (b) maintain attention; (c) understand, remember and carry out simple job instructions; and (d) maintain personal appearance.  (Tr. 451-52).  Cotto described Feliciano's limitations as borderline intelligence, concrete thinking, slow processing of information, forgetfulness and poor concentration and retention ability.  (Tr. 452).

On November 7, 2008, Feliciano visited Cotto to renew her medication.  (Tr. 220).  She was in post-detoxification for cocaine and Xanax status.  (Tr. 220).  In describing Feliciano's mental status, Cotto noted anxious mood and unremarkable behavior and psychomotor behavior.  (Tr. 221).  Feliciano had fair reasoning, impulse control, judgment and insight and her thought process was logical.  (Tr. 221).  On December 12, 2008, Feliciano reported to Cotto that she was feeling anxious, during the day, and asked to have her Prozac dosage increased.  (Tr. 224).  Her mental status was not changed.  (Tr. 225).

On January 9, 2009, Feliciano visited Cotto to renew her medication and admitted using cocaine and drinking alcohol over the holidays.  (Tr. 228-30).  Cotto assessed her mood as irritable, attention distracted and insight and reasoning poor.  (Tr. 229).  On February 6, 2009, Feliciano visited Cotto, complaining of stress resulting from discord with her husband.  (Tr. 232-34).  Cotto reported no signs of psychosis or mania and that Feliciano was well groomed.  (Tr. 233).  Her behavior was unremarkable, her affect labile, mood anxious, memory intact, attention maintained and thought process logical.  (Tr. 233-34).  Feliciano's reasoning, impulse control, judgment and insight were fair and Cotto found that Feliciano's self-perception was realistic.  (Tr. 233-34).  On February 20, 2009, Feliciano reported to Cotto that she felt increasingly anxious and her medication was not working.  (Tr. 236).  She admitted using Xanax

intermittently and that she had taken Prozac and Trazodone. (Tr. 236). Her mental status
evaluation showed unremarkable findings. (Tr. 237-38). On April 2, 2009, Feliciano visited
Cotto in order to renew her medication. (Tr. 240). At that time, she complained of feeling
anxious and stressed. (Tr. 240). Her speech was described as excessive, her attitude
cooperative, but discouraged. (Tr. 241). Cotto noted that Feliciano's mood was anxious, but
other findings were unremarkable. (Tr. 241).

    Dr. David Guttman

    On March 20, 2008, at the reference of the Division of Disability Determination, Dr.
David Guttman ("Dr. Guttman") conducted an internal medicine examination of Feliciano.
(Tr. 145-48). Dr. Guttman found that she was five feet, four inches tall, weighed 193 pounds
and her blood pressure was 120/80. (Tr. 146). Dr. Guttman noted that Feliciano complained of
asthma, chest pain, back pain, depression and hypertension. (Tr. 145). He indicated that
Feliciano appeared to be in no acute distress, her gait was normal, she could walk on heels and
toes without difficulty, squat fully, had normal stance and needed no help changing or getting on
or off the examination table. (Tr. 146). The examination revealed that Feliciano's lungs were
clear and her heart rhythm was regular. (Tr. 146). Dr. Guttman's musculoskeletal examination
revealed that Feliciano had full cervical and lumbar spine motion and her straight leg rasing was
negative. (Tr. 147). She also demonstrated full range of motions in her shoulders, elbows,
forearms and wrists, as well as her hips, knees and ankles. (Tr. 147). According to Dr. Guttman,
Feliciano had full muscle strength in her upper and lower extremities and he found that deep
tendon reflexes were physiologic and equal in her upper and lower extremities and no sensory or
motor deficit existed. (Tr. 147). Dr. Guttman diagnosed asthma, nonexertional chest pain, low
back pain, depression and hypertension. (Tr. 147). He recommended that Feliciano be referred

for psychological evaluation and that she avoid exposure to smoke, dust and other respiratory irritants.  (Tr. 148).

Dr. Herbert Meadow

On March 20, 2008, Dr. Herbert Meadow ("Dr. Meadow") conducted a psychiatric evaluation of Feliciano.  (Tr. 149-52).  He noted that Feliciano's demeanor was cooperative and her manner of relating adequate.  (Tr. 150).  Feliciano was appropriately dressed, neat, causal and well groomed.  (Tr. 150).  Her gait, posture and motor behavior were normal and her eye contact appropriate.  (Tr. 150).  Feliciano's speech was fluent and clear and her language adequate.  (Tr. 150).  Dr. Meadow determined that Feliciano's thought process was coherent and goal directed, with no evidence of hallucinations, delusions or paranoia and her speech and thought content were appropriate.  (Tr. 150).  Dr. Meadow observed that Feliciano's mood was depressed and he stated that her attention and concentration were impaired, due to her limited intellect.  (Tr. 150).  Feliciano acknowledged that she always had problems with math and she was unable to count serial threes from twenty.  (Tr. 150).  Her recent and remote memory were intact, based on Feliciano's demonstrated ability to remember.  (Tr. 151).  However, her cognitive functioning was below average.  (Tr. 151).  Concerning Feliciano's daily activities, Dr. Meadow reported that she cooked, cleaned, did laundry, shopped, managed her money and took public transportation.  (Tr. 151).  She also socialized with friends and family, read and watched television.  (Tr. 151).  Dr. Meadow diagnosed depression disorder, polysubstance abuse and dependence in partial remission, opiate dependence, hypertension, asthma and back pain. (Tr. 151).  He recommended that Feliciano continue with psychiatric treatment and that she would need assistance managing funds as she has problems with math.  (Tr. 152).  He opined that Feliciano would be able to perform all tasks necessary for vocational functioning and that

10

her psychiatric problems do not appear to be significant enough to interfere with her ability to function on a daily basis.  (Tr. 151).

<u>Albert Einstein College of Medicine Substance Abuse Program</u>

Feliciano was treated at the Albert Einstein College of Medicine Substance Abuse Program during the period April through October 2008.  (Tr. 343-441).  As of April 7, 2008, a schedule was established for Feliciano to obtain 70 mg of Methadone six days per week.  (Tr. 343).  She acknowledged that her mental state was stable and stated she was on public assistance and did not wish to work at that time.  (Tr. 349).  A social worker recommended extensive vocational counseling to prepare Feliciano for work.  (Tr. 354).  On July 11, 2008, it was noted that Feliciano struggled in treatment.  (Tr. 359).  On October 6, 2008, it was noted that she was treated at Conifer Park, an inpatient drug treatment program, for detoxification and rehabilitation.  (Tr. 361).

On October 21, 2008, Feliciano was seen by Dr. Robert Roose ("Dr. Roose"), who noted that she was, at that time, in Conifer Park for detoxification and rehabilitation for thirty days and was feeling much better.  (Tr. 402).  He stated that Feliciano had been detoxicated from Xanax and cocaine and the treatment was successful in reducing her Methadone dosage.  (Tr. 402).  Feliciano complained of body aches and chills and Dr. Roose increased her Methadone dosage.  (Tr. 402).

On February 10, 2009, Dr. Roose noted that Feliciano's mood was depressed, her affect restricted and she was tearful.  (Tr. 402).  He observed that Feliciano was well groomed.  (Tr. 402).  According to Dr. Roose, Feliciano was harboring suicidal ideation and she was not exhibiting any evidence of psychosis.  (Tr. 402).  Dr. Roose's assessment was suicidal ideation precipitated by stressful event, but he did not believe that she would carry out her feelings.

11

(Tr. 402).  He advised Feliciano to call 911 if she felt like hurting or killing herself.  (Tr. 402).

Feliciano declined an offer to be taken to an emergency room.  (Tr. 402).

On April 13, 2009, Feliciano complained to Dr. Roose about chest pain.  (Tr. 403).  Her

blood pressure was 140/85 and Dr. Roose concluded that her chest pain was atypical for angina.

(Tr. 403).  He referred Feliciano for a chest x-ray and stress echocardiogram (Tr. 403).  Dr.

Roose stated that Feliciano was not taking any hypertension medication and started her on

Lisinopril for her hypertension.  (Tr. 403).  When Feliciano saw Dr. Roose on April 22, 2009, he

noted that she had a stress test and had not experienced any new or significant chest pain during

the test or during the past week.  (Tr. 404).  Feliciano denied shortness of breath.  (Tr. 404).  Her

stress test was negative for symptoms or other abnormality.  (Tr. 404).  Dr. Roose's assessment

was hypertension with elevated blood pressure at rest and during the stress test.  (Tr. 404).

Conifer Park

Feliciano was treated at Conifer Park during the period September 22 to October 20,

2008.  (Tr. 291-341, 44-48).  She was diagnosed on admission with cocaine dependence,

sedative dependence, history of anxiety and depression and nicotine dependence.  (Tr. 291).

During her stay, Feliciano was monitored for asthma, allergies and upper respiratory infection.

(Tr. 291).  She was also seen for complaints about lower back pain, which radiated into her right

leg, but x-rays were negative.  (Tr. 291, 339).  Feliciano's clinical discharge summary indicates

that she had a history of pancreatitis, high blood pressure and asthma.  (Tr. 294).  The summary

indicated Feliciano was employable.  (Tr. 295).

Dr. Richard Wagman

Dr. Richard Wagman ("Dr. Wagman"), an internist, testified as a medial expert at the

administrative hearing.  (Tr. 37-38).  He reviewed all the medical evidence on the record and

heard Feliciano's testimony at the hearing.  Dr. Wagman stated that Feliciano had a history of

high blood pressure, which appeared to be under control, and that she had a history of chest pain,

but a stress test was negative.  (Tr. 37).  He testified that no evidence existed that Feliciano had

cardiac disease or an enlarged heart.  (Tr. 37).  Regarding Feliciano's back pain, he noted that x-

rays of her lumbar spine were entirely normal.  (Tr. 37).  According to Dr. Wagman, Feliciano

did not have a major back problem and she had a history of asthma, which was symptomatic

only about once a year and was not a major problem.  (Tr. 37).  He noted a reference to

pancreatitis in the record but stated that no evidence existed that Feliciano was treated for this

condition during the last few years.  (Tr. 37).  Dr. Wagman concluded that Feliciano did not have

a medically determinable impairment which restricted her physical functioning.  (Tr. 37).

### Dr. Leslie Fine

Dr. Leslie Fine ("Dr. Fine"), a psychiatrist, testified as a medical expert at the hearing.

(Tr. 40-51).  Dr. Fine reviewed all the medical evidence on the record and heard Feliciano's

testimony at the hearing.  Dr. Fine testified that Feliciano had a history of depressive disorder

and anxiety for which she was on Celexa, Wellbutrin and a small dose of Adarax, and that she

used other antidepressants in the past.  (Tr. 40).  Dr. Fine noted that Albert Einstein College of

Medicine Substance Abuse Program records indicate that Feliciano's mental health was stable.

(Tr. 40-41).  Dr. Fine opined that Feliciano's mental impairment did not satisfy the requirements

of the listing of impairments.  (Tr. 44).  Dr. Fine also opined that Feliciano's substance abuse

aggravated her mood disorder, but her daily activities are only mildly limited, her social

functioning was mildly to moderately limited, her concentration, persistence or pace were

moderately limited and no deterioration in work-life setting existed.  (Tr. 44).  Dr. Fine's opinion

was that Feliciano was capable of working, but was limited to simple, repetitive, low stress

13

work, where she would have minimal contact with others.  (Tr. 45).  Dr. Fine testified that

Cotto's August 28, 2008 assessment was not consistent with the evidence in the record.  (Tr. 50).

***The ALJ's Decision***

On September 30, 2009, the ALJ rendered his decision.  (Tr. 9-17).  The ALJ stated that

the issue was whether Feliciano was under disability, as that term was defined in SSA for the

purpose of determining eligibility for SSI under Title XVI of the Act.  (Tr. 10).  The ALJ

explained that SSI payments do not begin until the month after the month in which the

application is filed, assuming all eligibility requirements are met; thus, the specific issue was

whether Feliciano was disabled since January 23, 2008, the date of her application for benefits.

(Tr. 10).  The ALJ stated Feliciano testified that she suffers from depression and anxiety and that

her mind was not well.  (Tr. 12).  She testified that she cries a lot and she was intermittently

teary throughout the hearing.  (Tr. 12).  Feliciano also testified that: (i) she hears voices and does

not sleep well; and (ii) in the past, she once felt suicidal.  (Tr. 12).  She testified that she has

constant lower back pain, for which she takes medication, and she had chest pain in the past, but

not lately.  (Tr. 12).  According to Feliciano, she had "a touch of asthma."  (Tr. 12).  The ALJ

noted that Feliciano is married with one son and lives in a shelter, and she uses public

transportation to travel.  (Tr. 12).  Feliciano testified that she was treated at Promesa, Inc.

(Tr. 12).  The ALJ noted Feliciano's testimony about her daily activities, noting she cooked,

shopped and cleaned, although she did not feel like doing chores on some days.

The ALJ stated that Feliciano's records provide very little support for her claim of any

significant physical condition that impedes her ability to function.  (Tr. 13).  He noted that she

had hypertension and asthma, both controlled by medication, occasional back pain and once she

had reported right leg pain and left hip pain.  (Tr. 13).  The ALJ noted that Feliciano's clinical

14

examinations have been "quite unremarkable." (Tr. 13). He observed that the record evidence supports Feliciano's psychiatric complaints, because she had frequent positive urine toxicologies for various drugs during the entire period covered by her records, until April 2009. (Tr. 13). The ALJ described: (a) Feliciano's inpatient detoxification stay at Conifer Park in 2008; (b) Cotto's August 28, 2008 report and functional assessment; (c) Dr. Meadow's consultative psychiatric evaluation; (d) Dr. Wagman's testimony; and (e) Dr. Fine's testimony. (Tr. 13).

The ALJ stated that he agreed with Dr. Wagman that Feliciano has no proven severe medical impairment and that any physical limitation is not sufficient to render her disabled. (Tr. 14). The ALJ found that Feliciano has "an affective disorder," which is "best described as depressive disorder [not otherwise specified]," aggravated by her substance abuse. (Tr. 14). The ALJ stated that Feliciano's assertion that she hears voices is not documented in the record and "she carries no diagnostic suggestion of any psychosis nor is she given medication for such a symptom." (Tr. 14). In connection with that part of the testimony, "as well as with several other aspects of her testimony," the ALJ found Feliciano to be an unreliable witness. (Tr. 14).

The ALJ noted that Cotto stated in her August 2008 assessment that Feliciano was extremely impaired by her condition, but she also included a substance abuse diagnosis in her report, mentioning that Feliciano is a chronic substance abuser with multiple failed attempts to remain abstinent. (Tr. 14). The ALJ stated that "the document shows on its face that in offering her ratings, Ms. Cotto was considering not merely [Feliciano's] affective disorder, but also her persistent substance abuse. Of course such a consideration is inappropriate for a determination as to whether or not a person is 'disabled' under the Social Security regulations." (Tr. 15). Moreover, the ALJ found that Cotto was not entitled to treating physician status, since she is neither a medical doctor nor a clinical psychologist. (Tr. 15). The ALJ concluded: "Combining

15

that fact with the discrepancy (as Dr. Fine also observed) between Ms. Cotto's assigned GAF score <u>and</u> her own clinic's notes and records, I conclude that her extreme functional assessment is entitled to very little weight." (Tr. 15).

The ALJ found that Feliciano's "only proven 'severe' medically-determinable impairments are a depressive disorder [not otherwise specified] and polysubstance abuse (not in remission for at least most of the time relevant to this claim)." (Tr. 15). The ALJ agreed with Dr. Fine that Feliciano's depressive disorder, not otherwise specified, does not rise to listings-level severity, "nor, indeed, would it even with substance abuse considered." (Tr. 15). The ALJ found that Feliciano's "mental impairments impact her activities of daily living only mildly, and her social functioning and concentration/persistence/pace only moderately, for substantially all the period since her application." (Tr. 15). The ALJ also found that "despite her mental impairments, Ms. Feliciano retains the ability to perform work activity that is simple, repetitive, low in stress, and involves only minimal amounts of social interaction." (Tr. 15). The ALJ noted the testimony of the VE about available jobs and determined that the assumptions in Feliciano's counsel's questions to the VE were not supported by the record. (Tr. 15). The ALJ concluded that Feliciano was not under disability, as defined in SSA at any time through the date of his decision. (Tr. 17).

***Motion for Judgment on the Pleadings***

In her complaint, Feliciano asserts that the ALJ's decision was not supported by substantial evidence and was contrary to law. In his motion, the Commissioner contends that substantial evidence supports the ALJ's finding that Feliciano was not disabled and that she had residual functional capacity for a full range of physical work that is simple, repetitive, low stress and requiring minimal social interaction. Similarly, substantial evidence supports the ALJ's

16

finding that Feliciano was capable of performing a significant number of jobs in the national economy.  The Commissioner  argues that the ALJ's decision should be affirmed.

## DISCUSSION

### *Legal Standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error.  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).  "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations."  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

Title XVI of the SSA program provides benefits to "[e]ach aged, blind, or disabled individual who does not have an eligible spouse" and whose income and resources fall below a certain level.  42 U.S.C. § 1382(a).  To qualify for disability benefits, an individual must prove that she is unable "to engage in any substantial gainful activity by reason of any medically

17

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S. C. § 1382c(a)(3)(A); 20 C.F.R. § 416.912(a).  SSA regulations establish a five-step

process for determining a disability claim.  See 20 C.F.R. § 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social
> Security Administration] will not review the claim further.  At the first step, the
> agency will find nondisability unless, the claimant shows that he is not working at
> a "substantial gainful activity."  At step two, the [Social Security Administration]
> will find nondisability unless the claimant shows that he has a "severe impairment,"
> defined as "any impairment or combination of impairments which significantly
> limits [the claimant's] physical or mental ability to do basic work activities."  At step
> three, the agency determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe enough to render one
> disabled; if so, the claimant qualifies.  If the claimant's impairment is not on the list,
> the inquiry proceeds to step four, at which the [Social Security Administration]
> assesses whether the claimant can do his previous work; unless he shows that he
> cannot, he is determined not to be disabled.  If the claimant survives the fourth stage,
> the fifth, and final, step requires the [Social Security Administration] to consider so-
> called "vocational factors" (the claimant's age, education, and past work experience),
> and to determine whether the claimant is capable of performing other jobs existing
> in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) ( internal citations

omitted).  "[T]he ALJ generally has an affirmative obligation to develop the administrative

record."  Melville, 198 F.3d at 51.  Additionally, in determining disability, the ALJ must adhere

to the regulations governing the evaluation of the severity of mental impairments, which "require

application of a 'special technique' at the second and third steps of the five-step framework, and

at each level of administrative review."  Kohler, 546 F.3d at 265 (citations omitted); see 20

C.F.R. §416.920a(a).  If the claimant is found to have a mental impairment, the ALJ must rate

the degree of functional limitation resulting from the impairment in four broad functional areas

in order to determine the severity of mental impairments: (1) activities of daily living; (2) social

functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation.  See 20

18

C.F.R. § 416.920a(c)(3).  If a claimant's mental impairment is severe, the ALJ then determines if

it meets or is equivalent in severity to a listed mental disorder.  See 20 C.F.R. § 416.920a(d)(2).

This is done "by comparing the medical findings about [the claimant's] impairment(s) and the

rating of the degree of functional limitation to the criteria of the appropriate listed mental

disorder."  20 C.F.R. § 416.920a(d)(2).  If the ALJ finds that the claimant has "a severe mental

impairment(s) that neither meets nor is equivalent in severity to any listing, [the ALJ] will then

assess [the claimant's] residual functional capacity."  20 C.F.R. § 416.920a(d)(3).  The

application of this process must be documented.  See 20 C.F.R. § 416.920a(e).

> [T]he written decision must incorporate the pertinent findings and conclusions based
> on the technique.  The decision must show the significant history, including
> examination and laboratory findings, and the functional limitations that were
> considered in reaching a conclusion about the severity of the mental impairment(s).
> The decision must include a specific finding as to the degree of limitation in each of
> the functional areas described in paragraph (c) of this section.

20 C.F.R. §416.920a(e)(4).

In making his decision, the ALJ must consider: "(1) the objective medical facts;

(2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the claimant's educational background,

age, and work experience."  Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v.

Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).  "Although the claimant bears the general burden

of proving that he is disabled under the statute, 'if the claimant shows that his impairment

renders him unable to perform his past work, the burden then shifts to the [Commissioner] to

show there is other gainful work in the national economy which the claimant could perform.'"

Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health &

Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

19

*Application of Legal Standard*

The ALJ evaluated Feliciano's claim by applying the five-step sequential process for determining her disability claim and he adhered to the regulations governing the evaluation of the severity of her mental impairments.  Although he determined that Feliciano had a depressive disorder and polysubstance abuse, the impairments did not meet or equal the requirements of any listed impairment, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then determined that Feliciano had the residual functional capacity to perform a full range of physical work, but was limited to work that was simple, repetitive, low stress and requiring minimal social interaction.  At the fourth step of the sequential evaluation, the ALJ found that Feliciano did not have any past relevant work experience.  At the fifth step, the ALJ considered Feliciano's vocational factors, her residual functional capacity and the testimony of the VE, finding that a significant number of jobs existed in the national economy that Feliciano could perform.

The ALJ documented Feliciano's history, including examination and laboratory findings, and the functional limitations that he considered in reaching his conclusion about the severity of her mental impairments.  The ALJ explained, properly, why he did not give much weight to Cotto's August 28, 2008 report and functional assessment.  Although Feliciano was represented by counsel at the hearing, the ALJ took a proactive role in questioning her about the alleged physical impairments, after her counsel failed to elicit such testimony from her.  The ALJ considered the entire record carefully, noting discrepancies, and he explained why he found parts of Feliciano's testimony unreliable.  Moreover, the ALJ relied properly on the testimony of the VE.  Upon review of the record, the Court finds that the ALJ followed the regulations properly in reaching his decision, and the ALJ's decision is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, I recommend that the Commissioner's decision be affirmed and that the defendant's motion for judgment on the pleadings, Docket Entry No. 9, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardaphe, 500 Pearl Street, Room 920, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Gardaphe. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                    Respectfully submitted,
      July 15, 2011

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

21